UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 4/27/2017

-------------------------------------------------------- x

SILVIA SEIJAS, *et al.*,

                Plaintiffs,

       v.                    04-cv-400 (TPG)

THE REPUBLIC OF ARGENTINA,

                Defendant.

-------------------------------------------------------- x

SILVIA SEIJAS, *et al.*,

                Plaintiffs,

       v.                    04-cv-401 (TPG)

THE REPUBLIC OF ARGENTINA,

                Defendant.

-------------------------------------------------------- x

CESAR RAUL CASTRO,

                Plaintiff,

       v.                    04-cv-506 (TPG)

THE REPUBLIC OF ARGENTINA,

                Defendant.

-------------------------------------------------------- x

```
------------------------------------------------ x
                                                 :
HICKORY SECURITIES LTD.,                         :
                                                 :
                Plaintiff,                       :
                                                 :
        v.                                       :      04-cv-936 (TPG)
                                                 :
THE REPUBLIC OF ARGENTINA,                       :
                                                 :
                Defendant.                       :
                                                 :
------------------------------------------------ x
                                                 :
ELIZABETH ANDREA AZZA, *et al.*,                 :
                                                 :
                Plaintiffs,                      :
                                                 :
        v.                                       :      04-cv-937 (TPG)
                                                 :
THE REPUBLIC OF ARGENTINA,                       :
                                                 :
                Defendant.                       :
                                                 :
------------------------------------------------ x
                                                 :
ELIZABETH ANDREA AZZA, *et al.*,                 :
                                                 :
                Plaintiffs,                      :
                                                 :
        v.                                       :      04-cv-1085 (TPG)
                                                 :
THE REPUBLIC OF ARGENTINA,                       :
                                                 :
                Defendant.                       :
                                                 :
------------------------------------------------ x
```

```
-------------------------------------------------- x
                                                   :
EDUARDO PURICELLI,                                 :
                                                   :
                Plaintiff,                         :
                                                   :
        v.                                         :     04-cv-2117 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                Defendant.                         :
                                                   :
-------------------------------------------------- x
                                                   :
RUBEN DANIEL CHORNY,                               :
                                                   :
                Plaintiff,                         :
                                                   :
        v.                                         :     04-cv-2118 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                Defendant.                         :
                                                   :
-------------------------------------------------- x
                                                   :
HENRY H. BRECHER, *et al.*,                        :
                                                   :
                Plaintiffs,                        :
                                                   :
        v.                                         :     06-cv-15297 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                Defendant.                         :
                                                   :
-------------------------------------------------- x
```

## **OPINION & ORDER**

3

This opinion considers the settlements reached in nine class action cases against the Republic of Argentina (the "Republic") arising out of the Republic's 2001 default on bonds it issued. The lead plaintiffs bring these actions against the Republic on behalf of themselves and other continuous holders of interests[1] in particular bonds issued by the Republic.[2]

Lead plaintiffs in these long-standing cases petition the court for final approval of the negotiated settlements. The attorneys representing the classes also seek attorneys' fees awards and reimbursement of expenses. Additionally, the named plaintiff in *Brecher* requests an award of $5,000.

The court preliminarily approved the proposed settlements in *Brecher* and in the *Seijas* cases[3] in May 2016. Pursuant to the settlements, class members

---

[1] The court will refer to holders of interests in bonds as "bondholders."

[2] The bonds in which class members hold interests, referred to throughout as the "*Seijas* Class Bonds" and the "*Brecher* Class Bond" are defined as follows. The *Seijas* Class Bonds are: Republic of Argentina 11% Global Notes due October 9, 2006, US040114AN02; Republic of Argentina 7% Global Notes due December 19, 2008, US040114GF14; Republic of Argentina 9.75% Global Notes due September 19, 2027, US040114AV28; Republic of Argentina 11.75% Global Notes due June 15, 2015, US040114GA27; Republic of Argentina 11% Global Notes due December 5, 2005, US040114AZ32; Republic of Argentina 8.375% Global Notes due December 20, 2003, US040114AH34; Republic of Argentina Floating Rate L+0.8125 Global Notes due March 2005, XS0043120582. The *Brecher* Class Bond is Republic of Argentina 9.25% Global Notes due July 20, 2004, XS0113833510.

[3] *Seijas v. Republic of Argentina*, 04-cv-400; *Seijas v. Republic of Argentina*, 04-cv-401; *Castro v. Republic of Argentina*, 04-cv-506; *Hickory Securities LTD v. Republic of Argentina*, 04-cv-936; *Azza v. Republic of Argentina*, 04-cv-937; *Azza v. Republic of Argentina*, 04-cv-1085; *Puricelli v. Republic of Argentina*, 04-cv-2117; and *Chorny v. Republic of Argentina*, 04-cv-2118 are collectively referred to as the "*Seijas* cases," as the classes have maintained the same counsel throughout and have reached a unified settlement.

have submitted proof of claim forms demonstrating their interests in the Class Bonds. The settlements will result in class funds comprised of 150% of the outstanding principal of class members' bonds. The class funds will amount to approximately $23,164,249 for the *Seijas* classes[4] and approximately $3,049,440 for the *Brecher* class.[5] The terms of the settlements reached in *Brecher* and in the *Seijas* cases are identical, varying only in the number and value of claims submitted.

After full consideration of the settlements, the court now grants the petitions for final approval of the settlements in the above-captioned cases. In this opinion the court sets forth the basis for that approval, awards attorneys' fees and expenses, and denies the petition for an incentive award for the named plaintiff in *Brecher*.

## BACKGROUND

The allegations in these cases are tied to bonds issued by the Republic. After the Republic suffered an economic crisis, the Argentine government declared a moratorium on payment of its sovereign debts on December 24, 2001 and stopped making scheduled payments on its bonds, triggering defaults on the

---

[4] This amount is based on the submission of *Seijas* class counsel Diaz, Reus & Targ ("Diaz Reus") setting forth the total principal of agreed-upon claims submitted before the November 15, 2016 deadline as $15,442,833.

[5] This amount is based on the submission of *Brecher* class counsel Hagens Berman Sobol Shapiro LLP ("Hagens Berman") setting forth the total principal of agreed-upon claims submitted before the November 15, 2016 deadline as €1,853,200 and a conversion rate of €1/$1.097. The final value of the class fund may continue to fluctuate based on the conversion rate, as set forth in the settlement agreement between the parties.

*Seijas* and *Brecher* Class Bonds. Beginning in 2002, bondholders, including the plaintiffs in *Brecher* and in the *Seijas* cases, filed lawsuits in this court.

The Republic invited bondholders to exchange their defaulted bonds for newly issued bonds worth 25% to 29% of the original bonds' value in 2005 and again in 2010 (the "Exchange Offers"). While a number of bondholders participated in the Exchange Offers, the named plaintiffs and class members in these cases did not.

## I.    Litigation

The *Seijas* cases were filed between January and March 2004. *Brecher* was filed on December 19, 2006. Plaintiffs in these actions seek to enforce payment and other rights with respect to the *Seijas* and *Brecher* Class Bonds.

Pursuant to Federal Rule of Civil Procedure 23(b)(3), the court certified the *Seijas* classes in 2005, and the *Brecher* class in 2009. In all nine cases, the court adopted a class definition that limited members to continuous holders—all holders of Class Bonds who purchased or otherwise acquired interests in the Class Bonds prior to the date the cases were filed, and who will continue to hold those interests until the final judgments. The classes exclude (1) bondholders who participated in either of the Exchange Offers; (2) bondholders who, for any reason, fail to hold interests in the Class Bonds through the date of judgment and settlement of the class action; (3) bondholders who initiated separate proceedings to recover damages, whether in court or through any other dispute resolution mechanism, including arbitration; (4) the Republic; and (5) bondholders who filed a written notice requesting exclusion. The class

definition was designed to prevent the classes from being too fluid. *See H.W. Urban GmbH v. Republic of Argentina*, No. 02 Civ. 5699, 2004 WL 307293, at *3 (S.D.N.Y. Feb. 17, 2004) (adopting the continuous holder definition in another class action brought by bondholders against the Republic).

Notice of the pendency of the *Seijas* cases was published and disseminated in 2007. The formal opt-out period ran through 2008. A number of potential class members opted out of the *Seijas* cases during the initial opt-out period. Notice of the pendency of the *Brecher* class action was disseminated in August 2011. Those holding interests in the *Brecher* Class Bond had a formal opportunity to opt out during a 90-day period ending on October 31, 2011. No holders of interests in the *Brecher* Class Bond requested exclusion from the class.

In addition to the formal procedure, potential class members had several other opportunities to opt out by (i) filing a separate lawsuit or claim in arbitration, (ii) accepting one of the Exchange Offers, or (iii) selling their interests in the *Seijas* or *Brecher* Class Bonds at any time during the litigation.

These nine class action cases have been pending for over a decade. Plaintiffs in the *Seijas* cases have conducted multiple rounds of discovery in connection with class certification, and made numerous attempts to collect on judgments against the Republic. Plaintiffs in all classes have moved for summary judgment and prepared for evidentiary hearings to determine the value of the damages sustained by class members. Moreover, the litigation has involved arguments before the Second Circuit.

For many years, the Republic refused to negotiate with holders of interests in the defaulted bonds and engaged in an "unprecedented, systematic scheme" to make payments on external indebtedness other than the defaulted bonds. *See, e.g.*, Order, *NML Capital Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Feb. 23, 2012). As part of that scheme, the Republic enacted Law 26,017—the "Lock Law"—which prohibited the Republic from "conducting any type of in-court, out-of-court or private settlement" with bondholders who could have participated in the Exchange Offers. Then, in 2009, the Republic enacted Law 26,547, which prohibited the Republic from giving any bondholders who had filed lawsuits more favorable treatment than that offered to those who did not do so. In 2016, both laws were repealed under President Macri's administration.

In February 2016, the Republic formally published a proposal (the "Propuesta") to outstanding holders of interests in certain defaulted bonds, including the Class Bonds. *See* Propuesta, 5 de Febrero de 2016. The Propuesta set forth a "Standard Offer," which is open to all holders of interests in certain defaulted bonds and provides for a cash payment equal to the original principal of the bond plus 50% of that principal, classified as interest.

## II.    Settlement

Since assuming office, President Macri has made a concerted effort to resolve this outstanding litigation. Due to the diligent efforts of President Macri's administration, class counsel, and Special Master Daniel A. Pollack, Esq., the parties in these class actions reached proposed settlements in May 2016.

The terms of the settlements in *Brecher* and the *Seijas* cases are identical. Pursuant to the settlements, class members were required to submit proof of claim forms to class counsel, who then submitted the forms to the Republic by November 15, 2016.[6] Under the settlements, class members will tender their qualifying Class Bonds to the Republic, and the Republic will pay 150% of the principal amount of the tendered Class Bonds into class funds. The Republic has also agreed to cover $40,000 of the expenses for settlement notice in the *Seijas* cases and $25,000 of the expenses for settlement notice in *Brecher*.

The court preliminarily approved the proposed settlements in *Brecher* and the *Seijas* cases on May 27, 2016. At that time, the court also directed the parties to begin the notice process. The approved notice included a description of the settlement terms, an explanation of the claims procedure, the mechanism for submitting claims, and a warning that class members would be bound by the terms of the settlement.

Gilardi & Co. LLC ("Gilardi") served as the administrator charged with distribution of notice of the settlements and collection of claims. Gilardi distributed notice in accordance with the plans approved in the court's May 27, 2016 Order. In the *Seijas* cases, Gilardi mailed 6,247 claims packages to potential class members and nominal holders.[7] Gilardi mailed 3,192 claims

---

[6] November 15, 2016 was the final date for submission of claims to the Republic. *Seijas*, 04-cv-400, ECF No. 353; *Brecher*, 06-cv-15297, ECF No. 138. No claims submitted after that date will be considered in this opinion.

[7] Nominal holders are brokerages, custodial banks and other institutions that hold securities as nominees for the benefit of their customers who are the beneficial owners of the securities.

packages to potential *Brecher* class members and nominal holders. Gilardi established a toll-free telephone number and websites dedicated to all nine cases to further facilitate the notice and claims process. Notice was also published by the Depository Trust Company.

In the *Seijas* cases, class members have submitted 122 accepted claims, for a total of $15,442,833 in principal to date.[8] A settlement fund based on those claims would amount to approximately $23,164,249. In *Brecher*, class members submitted 61 valid claims to date. The principal for the *Brecher* claims is €1,853,200, which would result in a class fund of approximately $3,049,440.[9]

Class members' participation in the claims process has been significant. There have been no objections to the proposed settlement in *Brecher*. Only seven *Seijas* class members filed objections, representing less than 6% of the *Seijas* classes.[10]

---

[8] To the extent the parties agree to the inclusion of additional claims submitted to Gilardi prior to the November 15, 2016 deadline, the parties are free to include those claims.

[9] Pursuant to the *Brecher* settlement agreement, the final conversion rate is to be set at a later date. For the purposes of this opinion only, the court will use the conversion rate set forth in plaintiff's November 1, 2016 submission— €1/$1.097—to assess the fairness of the proposed settlement.

[10] Timely objections were submitted by Miguel Flitt, Raúl O Tomassini, Omar Santos Palermo, Ira Sohn, Javier Casas Scardino, and Gerardo Salome. Although class member John H. Temple initially submitted a timely objection as well, his objection was resolved through the extension of the date for claim submissions to November 15, 2016. Frederico R. Martinez Trigueros submitted an untimely objection. Without deciding whether the late objector has demonstrated excusable neglect for his tardiness, the court will consider his objection in determining whether to approve the proposed settlement. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 457 n.10 (S.D.N.Y. 2004).

### III.  Attorneys' Fees and Expenses

#### A.  *Seijas* Cases

The *Seijas* classes were originally represented by Saul Roffe, who worked for Sirota & Sirota ("Sirota") at the time, and Gillermo Gleizer. When the court certified the classes in August 2005, Gleizer and Roffe were appointed as class counsel. In November 2006, Proskauer Rose LLP ("Proskauer") was added as co-lead class counsel. In 2007, Sirota ceased operations, but Roffe continued to represent the *Seijas* classes.[11] In February 2010, Gleizer joined the law firm of Diaz, Reus & Targ, LLP ("Diaz Reus"), and in April 2010, Diaz Reus was substituted for Gleizer as class counsel. Gleizer subsequently left Diaz Reus, and ceased all involvement in the *Seijas* cases in July 2010. Proskauer, Roffe, and Diaz Reus are currently listed as class counsel of record in the *Seijas* cases ("Class Counsel of Record").

Class Counsel of Record submitted a request for expenses, seeking reimbursement of $914,513. Proskauer incurred $536,904.62 in expenses, Diaz Reus incurred $230,610.58, and Roffe and Sirota incurred $146,998.60. Gleizer is not seeking reimbursement for expenses.

Two separate requests for attorneys' fees have been submitted in the *Seijas* cases. First, Class Counsel of Record submitted a joint request for an attorneys' fees award of 33.3% of the class fund, to be calculated after the deduction of expenses. Proskauer, Roffe, and Diaz Reus submitted records reflecting the

---

[11] Roffe and his firm are successors in interest to Sirota, and he asserts that he is entitled to collect attorneys' fees and expenses on behalf of Sirota.

hours worked by each firm and the resulting lodestar for each firm. Proskauer reported 6,714 hours of work, with a resulting lodestar of $3,595,250. Roffe states that he and Sirota billed 7,925 hours of work, with a resulting lodestar of $3,767,847.50.[12] Diaz Reus reported 7,947.2 hours of work, with a resulting lodestar of $4,426,182. The combined lodestar for *Seijas* Class Counsel of Record is just under $11.8 million.

Second, Gleizer has filed submissions supporting the request for a 33.3% attorneys' fees award, but requesting that he be awarded 25% of that fee, plus a percentage of the remaining fee award "based on the proportionate hours expended." Gleizer has not submitted supporting records, but states that he billed 1,673.75 hours at a rate of $850 per hour, with a resulting lodestar of $1,422,687.50.

*Seijas* Class Counsel of Record maintain that Gleizer is not entitled to any fees. On November 10, 2016, the court issued an order instructing the attorneys who submitted attorneys' fees requests to conduct good faith negotiations to resolve the issue of Gleizer's entitlement to attorneys' fees in these cases. To the court's dismay, the attorneys have been unable to come to a resolution or submit an agreed-upon proposal.

---

[12] The court notes that the time records Roffe submitted at the court's request do not match the hours he previously reported. *Compare* ECF No. 333 Ex. B (reporting 633.6 hours for the Law Offices of Saul Roffe) *with* ECF No. 375 Ex. B (reporting only 620.2 hours for the Law Offices of Saul Roffe). The lodestar for 620.2 hours would be $310,100, bringing the overall lodestar for Class Counsel of Record to $11,789,279.50.

The court is in receipt of objections to the requests for attorneys' fees in the *Seijas* cases from Miguel Flitt, Javier Casas Scardino, and Omar Santos Palermo.[13]

## B.  *Brecher*

The *Brecher* class is represented by Hagens Berman. Hagens Berman requests an attorneys' fees award of 30% of the whole class fund. Based on the estimated $3,049,440 class fund, an attorneys' fees award of 30% would amount to approximately $914,832. Hagens Berman has submitted a detailed account of the hours worked and rates charged by its attorneys, which result in a lodestar of $1,206,222. Hagens Berman also seeks reimbursement for expenses amounting to $37,540.40.

## IV.  Fairness Hearing

On November 10, 2016, the court held a fairness hearing. Class Counsel of Record in the *Seijas* cases, Gleizer, class counsel in *Brecher*, and counsel for the Republic appeared at the hearing. Objecting class member Ira Sohn also appeared. The court reserved decision.

**DISCUSSION**

## I.  Approval of the Settlement

Pursuant to Federal Rule of Civil Procedure 23(e), any settlement in a class action requires court approval. Before approving a class action settlement, the

---

[13] Class Counsel of Record initially anticipated that the settlement would result in a larger class fund, and the value of the initial attorneys' fees requested were significantly higher based on the anticipated fund. The initial attorneys' fees request represented a lodestar multiplier of 3.

court must "carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). The court must determine that the settlement is procedurally and substantively fair, reasonable, and adequate. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116–17 (2d Cir. 2005).

There is "a strong judicial policy in favor of settlements, particularly in the class action context." *Id.* at 116 (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). Public policy favors settlement in class actions based on the reduction in litigation and related expenses and the risks inherent in maintaining class action litigation over long periods of time. *In re Glob. Crossing*, 225 F.R.D. at 455; *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129 (2d Cir. 2001). These considerations are particularly strong in this longstanding legal battle.

### A. Procedural Fairness

A settlement is presumed to be procedurally fair if it is the product of "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart,* 396 F.3d at 116. All parties here have been represented faithfully and competently by experienced counsel knowledgeable in complex class actions. Class counsel and defense counsel are intimately familiar with the issues presented by these decade-long disputes, and have dedicated significant time, effort, and resources to reach the proposed settlement agreements. Although there was some potential for concern regarding the overlapping representation of the classes, *see Seijas v. Republic of Argentina*, 606

F.3d 53, 57 (2d Cir. 2010), the plaintiffs are no longer in competition with one another to recover judgments, so the overlapping representation is no longer cause for concern. The settlements in front of the court were reached through prolonged negotiations facilitated by Special Master Daniel Pollack. Because "a court-appointed mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure," *D'Amato*, 236 F.3d at 85, the court has no doubt that the settlements in these nine class actions are procedurally fair.

## B.    Substantive Fairness

To evaluate the substantive fairness of a settlement, the court must look at the totality of the circumstances in light of the facts of the particular case. *In re Glob. Crossing*, 225 F.R.D. at 456; *Thompson v. Metro Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003).  The court considers the following nine factors set forth in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974), to determine whether the settlement is substantively fair: (1) the complexity, duration, and expense of additional litigation; (2) the class's reaction to the settlement; (3) the stage of the proceeding and the discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement amount in light of the best possible recovery; and (9) the range of reasonableness of the settlement amount in light of all attendant risks of litigation. *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) (citing *Grinnell*, 495 F.2d at 463). Not every factor must

weigh in favor of settlement for the court to find that the settlement is fair, reasonable, and adequate. *In re Glob. Crossing*, 225 F.R.D. at 456.

As set forth below, the court finds that, on the whole, the *Grinnell* factors weigh in favor of approval of the settlements.

### 1.    Complexity, Duration, and Expense of Additional Litigation

The litigation in these cases dates back more than a decade and has been full of complex legal questions. The proposed settlements result in a tangible present recovery without the risk and delay of trial, which strongly tips the scales in favor of the settlements. *See Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 196 (S.D.N.Y. 2012), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013).

Further, securing a judgment in these cases would require complex and burdensome evidentiary hearings to establish damages. *Puricelli v. Republic of Argentina*, 797 F.3d 213, 217 (2d Cir. 2015); *Hickory Sec. Ltd. v. Republic of Argentina*, 493 F. App'x 156, 160 (2d Cir. 2012) (summary order). Quite possibly, the evidentiary hearings into class damages would require an individualized approach. *Puricelli*, 797 F.3d at 217. By achieving settlement in these cases, class members will avoid the arduous process of pinning down the value of class members' claims, which can fluctuate due to the definition of the classes.

Continuing to litigate these cases would result in a long delay before any recovery would be possible. If the classes successfully went through the process of determining the value of the claims to obtain judgment, class members would

still need to recover on that judgment, which in these cases would be a lengthy and costly process. Plaintiffs have already invested significant time and resources unsuccessfully attempting to attach Argentine assets. Plaintiffs might never succeed and, in any event, recovery could take years. During that delay, the classes would continue to incur additional expenses, including costly travel expenses and attorneys' fees. The settlements will relieve the classes from having to drag on this already decade-old litigation and from bearing the expense and delay of intensive evidentiary hearings on damages. Therefore, this *Grinnell* factor strongly supports approval of the settlements.

### 2. Reaction of the Classes

Next, the court considers the reaction of the classes. In accordance with the plan approved by the court, Gilardi distributed notice of the proposed settlements to potential class members and nominal holders in the *Brecher* and *Seijas* cases between July and October 2016. The notice and approval process is designed to solicit negative feedback regarding the proposed settlement. *Pinnacle*, 874 F. Supp. 2d at 197. "A certain number of opt outs and objections are to be expected in a class action." *Id.* (internal citations omitted).

While courts in this Circuit have regularly approved settlements where even a substantial portion of the class objects, *id.* at 197–98 (collecting cases), these settlements do not present that situation. Rather, the classes have generally reacted favorably. Only seven *Seijas* class members submitted objections, representing less than 6% of class members who submitted claims. In *Brecher*, there were no objections from class members. The low number of

objectors supports settlement approval. *See, e.g.*, *Wal-Mart*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *In re Glob. Crossing*, 225 F.R.D. at 457 (collecting cases in which settlements were approved over objections from 10–16% of class members). Although objecting *Seijas* class members—including class member Ira Sohn who spoke at the fairness hearing—express legitimate concern, they represent merely a fraction of the class members who have submitted claims. The objectors' concerns do not lead the court to conclude that the majority of the class members are unsatisfied with the settlement.

Although the court has discretion to permit a second opt-out period, Fed. R. Civ. P. 23(e)(3), the court declines to do so here. "Neither due process nor Rule 23(e)(3) requires . . . a second opt-out period." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006). Here, the opt-out notice for each class was well-designed, thoroughly circulated, and adequate. The content of the notices was sufficiently detailed to inform class members that their rights were at issue and to provide them an opportunity to learn the full extent of this litigation. Because the class definitions limit class members to continuous bond holders, class members could have continued to exclude themselves from the classes by participating in one of the Exchange Offers or by selling their bonds on the secondary market. If class members did not wish to be bound by the settlement, they were required to opt out at an earlier stage. *See, e.g.*, *Wal-Mart*, 396 F.3d at 115. Class members had an unusual amount of flexibility in opting out of this

litigation up until the point of settlement and a further opportunity is not needed to ensure the fairness of the settlements.

### 3. Stage of the Proceeding and Discovery Completed

The next factor the court considers to determine the substantive fairness of the proposed settlements is the stage of the proceeding and the discovery completed. This factor is designed "to assure the Court that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them." *In re Glob. Crossing*, 225 F.R.D. at 458 (citations omitted). Because these settlements were reached after class certification, they are not subject to the additional scrutiny that would be required if the cases were settled before class certification. *Pinnacle*, 874 F. Supp. 2d at 198. Where discovery has been conducted in the course of the litigation and not just for settlement purposes, this *Grinnell* factor weighs in favor of approving the settlement. *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009).

The advanced stage of this litigation and amount of discovery completed in these cases weigh in favor of approval of the settlements. Plaintiffs' counsel investigated the relevant facts at length before even filing the complaints, which supports approval of the settlements. *See In re Glob. Crossing*, 225 F.R.D. at 458. The motion practice and certification processes in these cases required extensive inquiry into the relevant facts. Therefore, the parties exchanged discovery and expert reports in the course of litigation, not for the purpose of settlement. Moreover, the lengthy duration of the litigation has provided counsel with

sufficient time and information to assess the settlement options. This *Grinnell* factor therefore weighs in favor of approval of the settlements.

**4.**     **Risks of Establishing Liability, Establishing Damages, and Maintaining the Class Action Through Trial**

The court must also consider the risks of establishing liability, establishing damages, and maintaining these class actions through trial. These factors weigh heavily in favor of approving the proposed settlements, particularly in light of the uncertainty of the damages calculations, the difficulty of recovering on any judgments obtained, and the significant risk that there would be no class members remaining by the end of the litigation.

Although the Republic's liability has not been seriously contested in this litigation, the risks involved in maintaining the class actions through trial and establishing damages outweigh that fact. First, these cases present complicated class certification issues, which have been the subject of motions in this court and appeals to the Second Circuit. *See, e.g., Seijas*, 606 F.3d 53. If these cases were to continue, the classes would likely face renewed motions for decertification. The class definitions allow potential class members to continue to opt out as the litigation continues, threatening the classes' ability to satisfy the numerosity requirement for class certification. Second, as previously discussed, even if the classes were able to maintain this class action and prove liability, they would still face complex legal challenges, including the need to establish class damages through evidentiary hearings and potentially individualized inquiries to receive judgments.

For years, the court has emphasized that the defaulted-bond litigation against the Republic is unlikely to be resolved completely through litigation, *see, e.g., NML Capital, Ltd. v. Republic of Argentina*, No. 14-cv-8601, 2016 WL 715732, at *8–9 (S.D.N.Y. Feb. 19, 2016), because of the "substantial improbability that judgment creditors could ever reach assets belonging to Argentina," *Seijas*, 606 F.3d at 55. These settlements offer an opportunity for the classes to avoid the uncertainty of collecting damages and present a viable way forward. Under the proposed settlements, all class members stand to recover a portion—150% of the principal less a portion of the attorneys' fees and costs—of their damages immediately, which weighs in favor of settlement approval. *See Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 24 (S.D.N.Y. 2016) (finding that immediate recovery of a portion of the class's damages without trial or an appeal weighs in favor of settlement).

By obtaining approval of these settlements, class members avoid substantial risks, and gain the benefits of a simplified claims process, the guarantee of securing damages, and a timely recovery of those damages. The risks of further litigation strongly indicate that these settlements are fair and reasonable.

### 5. Reasonableness in Light of Potential Recovery and Attendant Risks of Litigation

"There is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of the law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking litigation to

completion." *Wal-Mart*, 396 F.3d at 119. "[W]hen settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable under this factor." *Pinnacle*, 874 F. Supp. 2d at 201 (citations omitted).

The amount of the settlements here are within the range of reasonableness in light of the best possible recovery in these cases. The classes' potential recovery is far from clear, even at this advanced stage of the litigation. The process of determining class damages in these cases has been complex and challenging due to the possibility that Class Bond holders acquired bonds after the cases were filed and due to class members' ability to continue excluding themselves from the class definition. Any aggregate damages calculation would have to account for those exclusions, *Hickory Sec. Ltd.*, 493 F. App'x at 160, making it difficult to accurately assess the classes' potential for recovery.

More importantly, the court has never presumed that the classes would be able to recover all of their damages. Rather, the court has emphasized the substantial improbability that class members could reach the Republic's assets to satisfy judgments awarded by the court. *Seijas*, 606 F.3d at 55. Even bondholders who secured judgments in court found it nearly impossible to recover on those judgments outside of the settlement process. *See NML Capital, Ltd. v. Republic of Argentina*, No. 14-cv-8601, 2015 WL 3542535, at *2 (S.D.N.Y. June 5, 2015). Thus, settlement presents the best potential for recovery in these class action cases against the Republic.

Although the settlements provide less compensation than the amount of damages class members assert they have suffered, the monetary relief available through the settlements falls well within the range of reasonableness in light of the classes' ability to recover through other means. The mere fact that the "proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455. Rather, the certainty of the settlement amount "has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery." *In re Glob. Crossing*, 225 F.R.D. at 461. In these cases, those obstacles are many, including the significant risk that any judgments obtained could not be collected. The Republic's proposal to settle for 150% of the bonds' principal represents an "earnest effort[] to negotiate," *NML Capital*, 2016 WL 715732, at *7, and ensures immediate monetary recovery. The settlements therefore represent a reasonable recovery on behalf of the classes.

Having considered all of the *Grinnell* factors, the court makes its essential finding that the proposed settlements are fair, reasonable, and adequate.

## III.    Costs & Expenses

Class counsel may be compensated for reasonable out-of-pocket expenses upon request. *Pa. Pub. Sch. Emps.' Ret. Sys.*, 318 F.R.D. at 27 (citing *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 131 (S.D.N.Y. 2009)). The court must ensure that any requests are reasonable. Fed. R. Civ. P. 23(h). When the expenses requested "reflect[] the typical costs of complex litigation

such as experts and consultants, trial consultants, litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses, courts should not depart from the common practice in this Circuit of granting expense requests." *Pa. Pub. Sch. Emps.' Ret. Sys.*, 318 F.R.D. at 27 (citations omitted).

Class Counsel of Record in the *Seijas* cases have submitted a joint request for expenses of $914,513.80, which represents approximately 4% of the *Seijas* class fund. Gleizer has not submitted a request for expenses.

The costs include (1) routine expenses, such as copying, printing, transcripts, and court costs, (2) computer research, (3) travel expenses, (4) translation services, and (5) telephone and communication fees. The bulk of the expenses represent computer research fees, which are reimbursable, *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 369 F.3d 91, 98 (2d Cir. 2004), and travel. Given the international nature of these cases, the travel fees, translation services, and telephone charges are reasonable.

However, Diaz Reus's overtime air conditioning charge for $1,372.61 is unreasonable, particularly because the other firms have not submitted such charges. The court will not award expenses to cover that charge. Furthermore, the court is concerned that the professional fees incurred by Proskauer and Diaz Reus, amounting to $36,661.89 ($16,761.89 by Proskauer and $19,900 by Diaz Reus) are duplicative and unreasonably high. Neither Proskauer nor Diaz Reus has provided an explanation as to what these services are or why the costs associated with the services are so high. The expense reports of the Offices of

Saul Roffe, Sirota, and Hagens Berman all lack such costs. Therefore, the court reduces the award of expenses for professional fees by $26,661.89, to $10,000. Class Counsel of Record in the *Seijas* cases are to be reimbursed for $886,479.30 in expenses.

Hagens Berman seeks to be reimbursed for expenses amounting to $37,540.40, which is about 1.2% of the class fund in *Brecher*. The expenses are reasonable and reflect the typical costs of complex litigation, such as court fees, copies, postage, and transcripts. The computer research costs Hagens Berman incurred are reimbursable, *id.*, and the travel expenses are reasonable in light of the international nature of the case. Hagens Berman is therefore awarded $37,540.40 for expenses.

All expenses shall be paid from the class funds in accordance with the terms of the settlements.

### IV.    Attorneys' Fees

Class counsel is entitled to collect reasonable attorneys' fees, as determined by the court. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Whether a fee is reasonable is within the discretion of the district court. *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) (citing *Goldberger*, 209 F.3d at 47). The court is required to conduct a "searching assessment regarding attorneys' fees." *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) (citing *Goldberger*, 209 F.3d at 52). The court must "ensure that the interests of the class members are not subordinated to the interests of . . . class counsel." *Pa. Pub. Sch. Emps.' Ret. Sys.*, 318 F.R.D. at 24

(quoting *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995)).

Attorneys' fees may be calculated as a percentage of the class fund, by the lodestar method, or using both approaches. *Goldberger*, 209 F.3d at 50. "[T]he common fund doctrine permits attorneys whose work created a common fund for the benefit of a group of plaintiffs to receive reasonable attorneys' fees from the fund." *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 86 (2d Cir. 2010). The lodestar method is calculated by multiplying the hours reasonably expended by class counsel by the reasonable market rate for the lawyers' services. *In re WorldCom*, 388 F. Supp. 2d at 355. A reasonable hourly rate should align with the prevailing rates in the district in which the court sits. *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997). Therefore, "market rates, where available, are the ideal proxy for compensation." *Goldberger*, 209 F.3d at 52.

In the Second Circuit, district courts have discretion whether to calculate attorneys' fees using the percentage method or the lodestar method, *McDaniel*, 595 F.3d at 419, but are encouraged to use the percentage method and do a "cross-check" with the lodestar calculation to ensure the fairness of the award, *Goldberger*, 209 F.3d at 50. Where a percentage fee is on the higher end of the range of reasonable fees but still represents a negative multiplier to the total lodestar, there is "no real danger of overcompensation." *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009).

District courts in the Second Circuit are also required to assess the reasonableness of attorneys' fees under the factors set forth in *Goldberger*: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. 209 F.3d at 50.

As described below, a 30% attorneys' fees award is reasonable in *Brecher* and the *Seijas* cases given the length, complexity, and risk involved in this litigation.

### A.    Attorneys' Fees Request in *Brecher*

Hagens Berman, class counsel in *Brecher*, requests attorneys' fees of 30% of the full class fund, which would amount to approximately $914,832. Hagens Berman reports that it spent 3,000 hours in connection with *Brecher*, resulting in a lodestar of $1,206,222. In support of this lodestar, Hagens Berman has submitted a detailed account of the hours expended by and billing rates for those who worked on the case.

In light of the *Goldberger* factors, the requested percentage is reasonable. First, Hagens Berman represented the *Brecher* class through ten years of litigation, expending 3,000 hours in connection with the case. This amount of time and labor justifies the 30% attorneys' fees award. Second, the magnitude and complexities of the *Brecher* case support an award of 30%. In particular, the class definition and the damages calculations for the class presented novel, complex legal issues requiring lengthy discovery, experts, appeals to the Second

Circuit, and hearings. Despite these challenges, Hagens Berman continued litigating on behalf of the class.

Most importantly, given the riskiness of this case, the requested 30% fee is justified. "The risk of success [is] perhaps the foremost factor to be considered" in determining a reasonable attorneys' fees award. *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at \*18 (quoting *Goldberger*, 209 F.3d at 54). The risk of success is to be measured from the time the case is filed, not with the benefit of hindsight. *Goldberger*, 209 F.3d at 55. At the outset of this litigation, and for many years thereafter, the risk that the class members might never recover on their claims was extremely high. Furthermore, the definition of the class as continuous bondholders created a risk that the number of class members would continue to shift, and that recovery of attorneys' fees would ultimately compensate Hagens Berman for only a fraction of the work it invested in the case. Even when recovery seemed unlikely due to the Republic's refusal to negotiate with the class and enactment of laws preventing negotiations with the class, Hagens Berman steadfastly continued to represent the class.

The settlement will result in an immediate recovery of monetary value in a case where that recovery appeared unlikely for many years, particularly at the commencement of the litigation. Although the value of the settlement may not fully compensate class members for all their losses, the settlement represents a better recovery than what those who participated in the Exchange Offers received. Hagens Berman represented the *Brecher* class faithfully for a decade, appearing before this court and the Second Circuit, advocating for a more

inclusive class definition, and filing for summary judgment. In assessing the quality of class counsel's performance, the court also looks to the quality of defense counsel. *See In re Glob. Crossing*, 225 F.R.D. at 467 (citing *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985)). The Republic was represented by Cleary, Gottlieb, Steen & Hamilton LLP ("Cleary Gottlieb") and Cravath, Swaine & Moore LLP ("Cravath")—two well-respected law firms—further demonstrating the reasonableness of a 30% fee based on the quality of counsel's representation.

Finally, the court considers whether the fee awarded "adequately encourage[s] class counsel to continue bringing cases of merit." *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d at 511. Hagens Berman's willingness to take this case on a contingency basis in spite of the risks involved, and to continue to represent the class even when success appeared unlikely, is a testament to its commitment. The awarded fee will hopefully encourage Hagens Berman to do the same in the future.

The requested attorneys' fees award of 30% is within the range of reasonable awards approved in this Circuit. *See In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12 Civ. 8557, 2014 WL 7323417, at *12 (S.D.N.Y. Dec. 19, 2014) (collecting cases). Given the length of time class counsel needed to wait to be paid for its work, and the risk involved in continuing to actively represent the classes when recovery seemed unlikely, an award of 30% is reasonable. However, if the fee is calculated as a percentage of the total class fund, Hagens Berman would be reimbursed for its reasonable expenses *and* be awarded a percentage

of their expenses. *See In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d at 514. The court sees no justification for that result. Therefore, the requested attorneys' fees award will be calculated as a percentage of the net class fund— that is, as a percentage of the fund after expenses have been deducted.

The lodestar cross-check affirms the reasonableness of Hagens Berman's attorneys' fees request. Hagens Berman dedicated 3,000 hours of work to the *Brecher* litigation, resulting in a lodestar of $1,206,222. The requested fee, calculated as a percentage of the net settlement, amounts to approximately $903,570, and represents a lodestar multiplier of .75. The fee requested will not fully compensate Hagens Berman for its work, highlighting the reasonableness of the fee. Therefore, Hagens Berman is awarded attorneys' fees of 30% of the net class fund.

### B.   Attorneys' Fees for Class Counsel in the *Seijas* Cases

#### 1.   Attorneys' Fees Award

All attorneys in the *Seijas* cases, including Gleizer, join in seeking an attorneys' fees award of 33.3% of the net class fund, which will amount to approximately $7,418,497. The requested 33.3% fee represents a multiplier of .62 of Class Counsel of Record's reported lodestar.[14] In support of this lodestar,

---

[14] This lodestar does not account for Gleizer's additional $1,705,737 in fees. The court will assess the reasonableness of the fee using the lodestar cross-check without including Gleizer's lodestar because Class Counsel of Record disputes Gleizer's entitlement to recover fees and because Gleizer did not keep contemporaneous records for all of the hours he billed or provide the court with a detailed account of his hours as requested in the January 24, 2017 Order. The court reserves decision on whether Gleizer is entitled to fees and, if so, the value of the fees he is entitled to collect. *See infra* Section IV.B.2. In the event Gleizer is entitled to fees and his records reflect a lodestar of $1,705,737.50, the

Class Counsel of Record has provided the court with a detailed account of the hours and rates billed by each firm during the twelve-year litigation. For comparison, Class Counsel of Record also provided records showing the hours and rates charged by attorneys in related bond litigation brought against the Republic in this court.

The class was notified of the request for an attorneys' fees award of 33.3% in accordance with the court's order. Pursuant to Federal Rule of Civil Procedure 23(h)(1), notice of a motion by class counsel for attorneys' fees must be served on all parties and "directed to class members in a reasonable manner." The court is not aware of any effort to notify class members of Gleizer's attorneys' fees request other than notifying Class Counsel of Record. However, Gleizer does not seek an attorneys' fees award in addition to that requested by Class Counsel of Record. Rather, Glezier joins in seeking approval of the 33.3% attorneys' fees award submitted by Class Counsel of Record, of which the class was properly notified. Additional notice to the class would be costly and unlikely to vindicate any legitimate interest. Because class members had notice of the request for a 33.3% attorneys' fees award, the court finds that further notice is not needed to meet the obligations of Rule 23(h)(1).

Class members were provided an opportunity to object, and several class members submitted objections to the court. As the objectors note, the lodestar method has flaws—namely that it is difficult to assess the efficacy of each hour

---

attorneys' fees awarded will compensate the attorneys for a smaller percentage of their lodestar.

billed by class counsel, especially over a twelve-year period. For that exact reason, the Second Circuit encourages trial courts to use the percentage method to calculate fees, using the lodestar as a cross-check, *Goldberger*, 209 F.3d at 50, as the court will do here.

The requested attorneys' fees of one-third of the net class fund in the *Seijas* cases is on the higher end of the range of reasonableness. Although class counsel certainly deserves to be awarded fees that reflect the time and effort invested in these cases, the requested percentage of 33.3% is too high. In light of the recovery achieved for the class members and objections from class members, a 30% attorneys' fees award is more reasonable, as the court will now explain.

The lodestar cross-check confirms the reasonableness of a 30% attorneys' fees award. That award will amount to approximately $6,683,330.91, compensating Class Counsel of Record for about 57% of the nearly $11.8 million lodestar. An award of 30% takes into account the length of time class counsel needed to wait to be paid for their work in these cases and the risk they incurred by continuing to actively represent the classes when the likelihood of recovery seemed low. But the award also takes into account class members' frustration with the recovery achieved by class counsel because it will not fully compensate counsel for the work they invested in these cases.

Applying the *Goldberger* factors further demonstrates the reasonableness of a 30% attorneys' fees award. First, class counsel expended significant time and effort in representing these eight classes for twelve years, justifying a 30% award. Class counsel spent more than 22,000 hours working on these cases, for

a combined lodestar of just under $11.8 million. Class counsel zealously argued the complexities of the cases in this court and in the Court of Appeals. Class counsel actively pursued recovery on behalf of the class members throughout the litigation, seeking preliminary injunctions, the attachment of Argentine assets, summary judgment, revised judgment, and modification of the class definitions. In support of their efforts to secure judgment against the Republic, class counsel responded to discovery requests, prepared expert reports, conducted fact and expert witness depositions, identified opt outs, and oversaw and administered the notice and claim submissions processes. Class counsel pursued every avenue for recovery and demonstrated their expertise in administering the settlement process by reviewing individual claims and documentation. Class counsel's extraordinary efforts justify a fee of 30%.

Second, the magnitude and complexity of these cases support the 30% attorneys' fees award. As the record indicates, the class definitions and the calculation of damages presented complex legal issues. Class certification and the calculation of damages required lengthy briefing, detailed factual development, and preparation for evidentiary hearings. This litigation spanned multiple continents. Thus, the cases required sophisticated and knowledgeable legal representation, which was adeptly provided by class counsel, demonstrating the reasonableness of a 30% attorneys' fees award.

Most importantly, the third *Goldberger* factor—the risk of success—weighs heavily in favor of an attorneys' fees award of 30%. *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *18 (quoting *Goldberger*, 209 F.3d at

54). Recovery on the class claims was far from certain at the outset of this litigation, especially in light of the Republic's steadfast refusal to pay class members, refusal to negotiate, and enactment of laws designed to prevent payment to all outstanding bondholders. The obstacles to obtaining and recovering on judgments in these cases were significant because of the difficulty in determining class damages and the Republic's status as a sovereign nation with limited attachable assets. Counsel took the risk that they would never be compensated for their work due to the possibility that the classes would never be able to recover from the Republic. No matter how unlikely the prospects of recovery, class counsel continued to bear these risks for over a decade.

The fourth *Goldberger* factor—the result achieved and quality of legal services provided—supports reducing class counsels' requested fee of 33.3% to 30%. The quality of the legal services provided is demonstrated by the fact that the settlement will result in an immediate monetary recovery to class members, an outcome that was far from guaranteed at the start of the litigation. "The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work." *In re Glob. Crossing*, 225 F.R.D. at 467 (quoting *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. at 749). The Republic has been represented vigorously at every stage of this litigation by some of the nation's leading law firms, including Cleary Gottlieb and Cravath. The quality of the Republic's representation reflects positively on class counsel's performance. But the "quality of representation is best measured by results." *Goldberger*, 209 F.3d at 55. The settlements here represent a significant accomplishment on behalf of

the class in comparison to the Exchange Offers, but they still represent the same recovery as the Republic offered to other bondholders in the Propuesta. In light of this recovery, an award of 33.3% of the class fund is too high. The court nonetheless recognizes the complex and pressing circumstances surrounding the settlements in these cases and the quality of representation class counsel provided, justifying an award of 30%.

Fifth, a 30% fee is reasonable in relation to class recovery in these cases. Again, "[i]n this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund." *In re Beacon Assocs. Litig.*, No. 09 Civ. 777, 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013). Comparing the fee-to-settlement-fund ratio to the ratios approved in other cases confirms the reasonableness of a 30% fee. According to an empirical study conducted by Professors Eisenberg and Miller in 2010, the mean fee percentage awarded for class recoveries of the size achieved in the *Seijas* cases is 22.1%, with a standard deviation of 8.7. Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements 1993–2008*, 7 J. Empirical Legal Stud. 248, 265 (2010); *see also In re Colgate-Palmolive Co. Erisa Litig.*, 36 F. Supp. 3d 344, 349–50 (S.D.N.Y. 2014) (assessing the reasonableness of the requested attorneys' fees award in relation to Professors Eisenberg and Miller's empirical study). A fee of 30% is within one standard deviation of that range.

While a 30% fee is on the higher end of percentages awarded for attorneys' fees in this Circuit, it is reasonable in light of the class recovery and class

counsel's investment in these cases. Because of the size of the class fund, a 30% fee will not result in a "windfall" at the expense of the class. *Contra In re Citigroup Inc. Bond Litig.,* 988 F. Supp. 2d 371, 374–75 (S.D.N.Y. 2013). To the contrary, a 30% fee will not even compensate class counsel for the full extent of their time and labor. Therefore, an award of attorneys' fees of 30% is reasonable in relation to the class recovery.

Finally, the court addresses the public policy considerations involved in awarding attorneys' fees from a class fund. The court considers what fee would adequately encourage class counsel to continue bringing cases of merit in the future, even in light of the risks counsel incurs by doing so. *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d at 511. That counsel continued to diligently represent these classes even after the Republic's steadfast refusal to negotiate or make payments on the class members' bond interest demonstrates class counsel's commitment to these cases—a dedication that is to be encouraged and rewarded. But the court must balance the desire to encourage counsel against the need to protect the instant classes from paying excessive fees. *See Wal-Mart*, 396 F.3d at 123 ("[T]he district court's decision in favor of protecting the instant class from an excessive fee award militates against awarding attorneys' fees based purely on economic incentives."). No attorneys' fees award can perfectly achieve both of these policy considerations in these cases, but after careful review, the court finds that a 30% award strikes the right balance.

Although the recovery for class members may be lower than desired, class counsel expended an extraordinary amount of time and labor on behalf of class

members. Class members were justifiably concerned about class counsel's original attorneys' fees request, which would have awarded class counsel fees of three times their lodestar. But the present award represents a discount, not a windfall, because it does not fully compensate class counsel for the time and effort they invested in the litigation. That discount reflects the value of the settlement achieved on behalf of the class, which was not fully satisfactory to the class members.

Taking into account all of the *Golberger* factors, and assessing the percentage-based fees award for reasonableness using counsel's lodestar, the court finds an attorneys' fees award of 30% of the net class fund to be reasonable in the *Seijas* cases.

## 2. Distribution of the Attorneys' Fees Award

As class counsel in the *Seijas* cases from 2004–2010, Gleizer may well be entitled to compensation for his work. But the information needed to resolve the dispute as to Gleizer's fees is not presently in front of the court. Therefore, the court declines to resolve the dispute regarding the distribution of attorneys' fees in the *Seijas* cases at this time. The attorneys' fees in the *Seijas* cases are to be paid into escrow until the current dispute as to how the fee will be allocated between Class Counsel of Record and Gleizer is resolved.

## V. Named Plaintiff Incentive Award

Class counsel in *Brecher* requests a service award of $5,000 to named plaintiff Henry H. Brecher. That request is denied.

The court has discretion to grant incentive awards. *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997). "Payments to class representatives, while not foreclosed, should be closely scrutinized." *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 434 (S.D.N.Y. 2014) (quoting *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007)). The court's main consideration in determining whether to grant an incentive award is the existence of special circumstances. *Roberts*, 979 F. Supp. at 200. Therefore, the court closely scrutinizes payments to class representatives considering (1) the personal risk incurred by the plaintiff, (2) the time and effort expended by the plaintiff in assisting the litigation, (3) any other burden sustained by the plaintiff due to the litigation, and (4) the ultimate recovery. *Id.* Incentive awards must be balanced against the "equally important quest for parity and fairness among class members." *In re AOL Time Warner ERISA Litig.*, No. 02 cv. 8853, 2007 WL 3145111, at *4 (S.D.N.Y. Oct. 26, 2007).

Class counsel argues that Brecher vigorously pursued the litigation in this case and has furthered the interests of the class by interviewing potential class counsel, learning about defaulted debt, responding to discovery, traveling to be deposed, and communicating with class counsel. Brecher certainly contributed to an ultimately successful class action, but the proposed incentive award would directly decrease the recovery of other class members. While Brecher is to be recognized for his efforts, he did not incur any additional risk in pursuing this litigation. Brecher diligently protected his interests and those of the class, but

his actions do not warrant an award that would take away from other class members' recovery.

## CONCLUSION

The court approves the settlements in these cases. Attorneys' fees of 30% of the class fund are awarded in the *Seijas* cases. The attorneys' fees in the *Seijas* cases are to be paid into escrow until the dispute regarding entitlement to the fees is resolved, and the court retains jurisdiction over that dispute. Attorneys' fees of 30% are awarded to Hagens Berman in *Brecher*. Brecher's application for a named plaintiff award of $5,000 is denied.

SO ORDERED

Dated: New York, New York
April 27, 2017

Thomas P. Griesa
United States District Judge